Pennsylvania Company, etc., Appellant, *v.*
Scott.

14

Argued April 13, 1942; reargued November 23, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*William E. Mikell, Jr.,* with him *Murray Forst Thompson* and *Saul, Ewing, Remick & Harrison,* for appellant.

*Meredith Hanna,* for appellee.

*Orville Brown,* Deputy Attorney General, with him *Claude T. Reno,* Attorney General, for appellee (intervening defendant).

*Paul Maloney,* with him *Evans, Bayard & Frick,* for interested party under Rule 61.

*Philip A. Brégy,* with him *Cuthbert H. Latta, Jr.,* and *MacCoy, Brittain, Evans & Lewis,* for interested party under Rule 61.

*Morris B. Levitt,* for interested party under Rule 61.

*Philip Sterling* and *Robert E. Haas,* for interested parties under Rule 61.

*Oscar G. Bender,* for interested parties under Rule 61.

OPINION BY MR. JUSTICE HORACE STERN, December 4, 1942:

In 1926 Eugene M. Burns executed and delivered to plaintiff a bond and mortgage secured on premises 451 North 53d Street, Philadelphia, in the principal sum of $3,000. In 1938, because of defaults in the payment of the principal and certain instalments of interest, plaintiff entered judgment on the bond by virtue of the warrant of attorney thereto attached, and damages were assessed in the amount of $3,385.11. The mortgaged premises were sold on a writ of fieri facias to plaintiff for $60, and the property was conveyed to plaintiff by sheriff's deed dated July 11, 1938. On August 7, 1941, plaintiff presented to defendant, the prothonotary of the Courts of Common Pleas of Philadelphia County, a præcipe for an alias writ of fieri facias to levy upon and sell personal property of Burns for the purpose of recovering the balance due on the judgment, but defendant refused to issue the writ on the ground that no petition had been filed to fix the fair market value of the premises sold in execution as required by the Deficiency Judgment Act of July 16, 1941, P. L. 400. Plaintiff thereupon petitioned the court for a writ of alternative mandamus directing defendant to issue the alias writ. The court dismissed the petition, and plaintiff now appeals.

The Act of 1941 provides (section 1): "Whenever any real property has heretofore been or is hereafter sold, directly or indirectly, to the plaintiff in execution proceedings and the price for which such property has been sold was or is not sufficient to satisfy the amount of the judgment, interest and costs, and the plaintiff seeks to collect the balance due on said judgment, interest and costs, the plaintiff or plaintiffs shall petition the court having jurisdiction to fix the fair market value of the real property sold as aforesaid." Section 7 of the act provides that such petition must be filed "not later than six months after the sale of any real property: Provided.

however, That, if the sale occurred prior to the effective date of this act, the plaintiff shall file such petition within six months after the effective date of this act [July 16, 1941]. In the event no petition is filed within such period the debtor, obligor, guarantor and any other person liable, directly or indirectly, to the plaintiff or plaintiffs for the payment of the debt shall be released and discharged of such liability to the plaintiff or plaintiffs."

In *Fidelity-Philadelphia Trust Co. v. Allen,* 343 Pa. 428, 22 A. 2d 896, in the interest of conformity with federal law, this statute was upheld, the United States Supreme Court having decided, in *Gelfert v. National City Bank,* 313 U. S. 221, that such legislation does not impair the obligation of a mortgage bond. In the *Allen* case the mortgaged premises had been sold in foreclosure proceedings prior to the effective date of the act, but no judgment in *personam* had been entered and the retroactive application of the statute was not discussed. It was stated that "As the record does not involve the application of the Act to sales on judgments *in personam* made prior to its effective date, no opinion on that subject is expressed." The present case calls for determination of the question thus suggested.

It is elementary that the legislature may not, under the guise of an act affecting remedies, destroy or impair final judgments obtained before the passage of the act, and this principle prohibits not only a statutory re-opening of cases previously decided by the court but also legislation affecting the inherent attributes of judgments or annulling or substantially interfering with the right to issue execution and to collect the amount due thereon: *Memphis v. United States,* 97 U. S. 293, 296; *McCullough v. Virginia,* 172 U. S. 102, 123, 124; *Hodges v. Snyder,* 261 U. S. 600, 603; *Bechtol v. Cobaugh,* 10 S. & R. 121; *McCabe v. Emerson,* 18 Pa. 111; *Ladner v. Siegel* (No. 4), 298 Pa. 487, 498, 148 A. 699, 702; *Chester School District's Audit,* 301 Pa. 203, 211, 151 A. 801,

804; 16 C. J. S. 689, 690, §271a; 30 Am. Jur. 898, 899, §146; 31 Am. Jur. 364, §883. There are two reasons for this limitation of legislative power; one, that a judgment is property of which, under state and federal constitutional prohibitions, the judgment creditor cannot be deprived without due process of law;[1] the other, that under our system of the division of governmental powers the legislature cannot invade the province of the judiciary by interfering with judgments or decrees previously rendered.[2]

The problem, then, reduces itself to this: Plaintiff having, since 1938, a judgment against Burns in the amount of $3,385.11, is its right of property therein impaired by the subsequent Deficiency Judgment Act? Does the act interfere with or adversely affect the judgment? We have concluded that the answers to these questions must be in the negative. The right of plaintiff under its bond and mortgage was to receive the payment from Burns of $3,000, but the Supreme Court of the United States has decided that a statute is valid which provides that if, in execution proceedings, the mortgagee buys the mortgaged premises, he must credit the fair value thereof on the bonded indebtedness, and that the obligation of the contract is not impaired by his being thus made to accept real estate at an appraised valuation instead of receiving "lawful money of the United States of America" as stipulated in such a bond. From this point of view it would seem necessarily to follow that the Act of 1941, even when applied retroactively, does not destroy any property right of plaintiff in the judgment on the bond, because the act, recognizing plaintiff's right to recover the full amount of the judgment, merely provides for an inquiry in regard to a transaction

---

[1] See authorities above cited.

[2] *DeChastellux v. Fairchild*, 15 Pa. 18; *Menges v. Dentler*, 33 Pa. 495; *Commonwealth ex rel. Johnson v. Halloway*, 42 Pa. 446, 448; *Baggs's Appeal*, 43 Pa. 512; *Richards v. Rote*, 68 Pa. 248, 256.

which occurred *subsequent* to the judgment, to wit, the sheriff's sale, in order to ascertain what amount of payment plaintiff has received, such an inquiry being analogous to the trial of an issue of payment raised as a defense to a writ of execution. If plaintiff was not entitled under its *bond* to be paid wholly in cash, but could be made by legislative mandate to account for the value of real estate purchased by it in execution, it cannot be said to be deprived by the statute of any property right in its *judgment* by being limited to a recovery of the balance due thereon after giving credit for the payment received through the acquisition of the real estate; there does not inhere in the judgment on the bond any greater right in that respect than attached to the obligation on which it was entered. If we assume, as we must from the decision in the *Gelfert* case, that the judgment creditor will eventually be able to realize from the real estate purchased in execution the valuation placed thereon by the court, plaintiff's enforced compliance with the act would not prevent the judgment from being ultimately paid in full. We are accordingly of opinion that the retroactive application of the statute to a sale previously held does not thereby impair any property right in the judgment on which the sale was had or improperly interfere with judicial functions, since the act deals only with the valuation of a payment in property made on account of the judgment and not with the inherent attributes of the judgment itself.

In *Pennsylvania Company for Insurances on Lives and Granting Annuities v. Scott,* 329 Pa. 534, 198 A. 115, the Act of July 2, 1937, P. L. 2751, was held to be a violation of Article III, section 7, of the Constitution as being a special law changing the method of collecting debts or enforcing judgments. It was there pointed out that it was not a reasonable classification to limit the provisions of the act to executions against mortgaged premises in foreclosure proceedings and on judgments entered on mortgage bonds. The present statute avoids this

criticism because it extends to all sales of real property in execution. Plaintiff insists that the act has not the scope thus stated because, notwithstanding the generality of the enacting clause (section 1), the title and several of the sections contain restrictive references to judgments entered for "debts", and it is contended that judgments in tort actions are thus excluded because an unliquidated claim for damages arising from a tort is not a "debt." It is true that, while every debt is an obligation, not every obligation is a debt (*Moorehead's Estate*, 289 Pa. 542, 553, 137 A. 802, 806), and that, ordinarily, the word "debt" is regarded as referring to a fixed amount due by virtue of a contract. However it is frequently given a broader connotation,[3] and is used to denote any kind of just demand.[4] Its precise meaning in a statute depends upon the apparent intention of the legislature in employing it, which intention is partly to be ascertained, according to the Statutory Construction Act of May 28, 1937, P. L. 1019, section 51, from the occasion and necessity for the law, the circumstances under which it was enacted, the mischief to be remedied, the object to be attained, and the consequences of a particular interpretation; also it is to be presumed (section 52) "that the Legislature does not intend to violate the Constitution of the United States or of this Commonwealth." Having in mind these rules, and especially that any ambiguity must be resolved in favor of the constitutionality of the act, we conclude that the statute covers all sales of real property in execution whether on

[3] Contrast, for example, *Adler v. Dickstein*, 139 Pa. Superior Ct. 447, 449-451, 12 A. 2d 489, 490, 491, with *Hollidaysburg Borough v. Snyder*, 258 Pa. 490, 494, 102 A. 168, 169.

[4] The Statutory Construction Act of May 28, 1937, P. L. 1019, section 101, defines the word "debtor" (in the absence of any clear indication in the context to the contrary) as "one who owes to another the performance of an obligation." The Uniform Fraudulent Conveyance Act of May 21, 1921, P. L. 1045, section 1, defines "debt" as including "any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent."

judgments in contract or in tort. Nor is it a ground for objection that the act deals only with sales of real estate and not of personal property, because it is common knowledge that the evil which the statute was designed to remedy was one connected exclusively, or at least largely, with sheriffs' sales of real estate.

Decree affirmed at appellant's cost.

DISSENTING OPINION BY MR. JUSTICE DREW:

I dissent from the majority. The question is whether the Deficiency Judgment Act of 1941, as applied to judgments in personam and sales of real estate thereon made prior to its enactment, is constitutional. In my opinion the Act materially changes the contract made by the parties and therefore violates Article I, section 17, of the Constitution of Pennsylvania. The decision of this Court to the contrary in *Fidelity-Philadelphia Trust Co. v. Allen,* 343 Pa. 428, is so clearly erroneous, both in its result and in the reasoning upon which that result was based, that it should not be permitted to stand. Although courts are slow to interfere with decisions which have been accepted and acted upon as the correct interpretation of the law for a long period *(In re Bickley's Estate,* 270 Pa. 101), it is not contrary to the maxim of *stare decisis* to overrule a decision which was plainly in error and which has existed only a short time: *Com. ex rel. Margiotti v. Lawrence,* 326 Pa. 526; *Callender's Administrator v. Keystone Mutual Life Insurance Co.,* 23 Pa. 471. ". . . *stare decisis* is . . . not a mechanical formula of adherence to the latest decision, however recent and questionable, when such adherence involves collision with a prior doctrine more embracing in its scope, intrinsically sounder, and verified by experience": *Helvering v. Hallock,* 309 U. S. 106, 119.

The effect of the Deficiency Judgment Act upon the obligation of the original contract does not depend upon the method of execution adopted by the creditor to collect his claim. If the original contractual obligations

are not impaired when the sale is on a writ of *levari facias* after *scire facias* proceedings, they are no more impaired when the sale is on a writ of *fieri facias* after judgment entered on the bond. In either case the creditor must accept, as the measure of satisfaction of his claim, the jury's or the court's valuation of the property rather than the price bid at the sale.

The fundamental question is whether or not this alters the debtor's obligation created by the mortgage contract. In *Beaver County B. & L. v. Winowich*, 323 Pa. 483, we held that it did alter it, saying, (p. 491): "From this summary of the Pennsylvania law which governed the bond and mortgage in the present case when those instruments were executed, it is obvious that defendants' obligation was changed materially by the Mortgage Deficiency Judgment Act. Instead of their covenant in the bond to pay 'the sum of twelve thousand three hundred dollars, lawful money of the United States of America' on or before July 1, 1941, plaintiff now was obliged to accept part payment of the debt in cash and part in real estate at a valuation appraised by a judge or jury, or, if such appraisement should fix the 'fair value' of the property at an amount equal to or greater than the indebtedness on the bond, plaintiff must be content with receiving *only* real estate and no 'lawful money' whatever. Of course, there is no assurance of a mortgagee being able to realize from the property the amount of a valuation placed upon it in accordance with the provisions of the act. The sale price is no longer conclusive between the parties as to the credit to be allowed on the debt, and the amount of the deficiency judgment to which the mortgagee was previously entitled is thus altered to a substantial and, it may be, drastic degree." We repudiated (p. 507) the argument that the statute merely provided for a new method of appraising the value of the debtor's property in place of the former method of a sheriff's sale, stating that the object of the sheriff's sale was not to fix the value of the property but to enable the

creditor to convert it into cash. We said (p. 507-8) that it was questionable whether as a practical matter a mortgagee ever was unjustly enriched after bidding in the property at a nominal sum,[1] and that even if he were, that result could have been guarded against by the parties when they made their contract, or, as to future mortgages, by legislation. In a concurring opinion, Chief Justice KEPHART pointed out that if the price were grossly inadequate, injustice to the mortgagor could be avoided by a petition to have the sale set aside and a new one held. And we concluded, after citing opinions by MARSHALL, STORY, GIBSON, TANEY, SHARSWOOD, CARDOZO, and BRANDEIS,[2] that "a statute which compels a mortgagee to accept real estate at an appraised valuation, in place of money, as a part liquidation of the mortgagor's obligation on the bond, must, as applied to pre-existing mortgages, be held to be unconstitutional" (p. 502). Our decision was in accord with the overwhelming weight of authority in the country, and contrary to the statement in the concurring opinion in the *Allen* case (343 Pa. at p. 431), we were not motivated merely by a desire to conform to the decisions of the Supreme Court of the United States. On the contrary, we had as a precedent in our own State the apposite language of Chief Justice SHARSWOOD in *Palairet's Estate*, 67 Pa. 479, 493 (holding unconstitutional an Act of Assembly providing for the extinction of all existing irredeemable ground rents) : "No one has ever supposed that an Act of As-

---

[1] The realism of this approach becomes more apparent when the income is insufficient and the purchasing mortgagee must maintain the property, by paying taxes and carrying charges, until the hypothetical fair value of the experts can be obtained, if ever.

[2] MARSHALL: *Sturges v. Crowninshield*, 4 Wheat. 122, 197; STORY: *Green v. Biddle*, 8 Wheat. 1, 84; and: Commentaries on the Constitution, Bk. 3 ch. 34, Par. 1379; GIBSON: *Chadwick v. Moore*, 8 W. & S. 49, 50; TANEY: *Bronson v. Kinzie*, 1 How. 311; SHARSWOOD: *Palairet's Appeal*, 67 Pa. 479; CARDOZO: *Worthen Co. v. Kavanaugh*, 295 U. S. 56; BRANDEIS: *Louisville Bank v. Redford*, 295 U. S. 555.

sembly could authorize, in the case of a lawful existing contract, one of the parties to tender a collateral thing in satisfaction or extinguishment of it, whatever the value of that thing might be as compared with the damage sustained by the breach. Yet, in effect, that is just what is done by this act. The covenant is to pay an annual rent forever; a jury are authorized to say what principal sum shall be satisfaction and extinguishment of that covenant; a collateral thing not provided for in the contract, and which might as well be anything else than money." This was directly authoritative for the *Winowich* decision, as it is for the controversy now before us, because the effect of a Deficiency Judgment Act is to compel the creditor to accept a collateral thing—real estate—at a jury's valuation in partial or complete satisfaction of the contract, and this was not within the scope of the parties' agreement. Thus in deciding the *Winowich* case we were adhering to long-established Pennsylvania authority.

By the *Allen* case, on the contrary, the majority of this Court, in a per curiam opinion, surrendered, it seems to me without justification, the previous conviction of the Court, as last expressed in the *Winowich* case, which was solidly supported by sound legal principles and by decisions of practically all sister jurisdictions that had passed upon the question.[3] This extreme

---

[3] *First Nat. Bank of Birmingham v. Jaffe*, 239 Ala. 567, 196 So. 103; *Kresos v. White*, 47 Ariz. 175, 54 P. 2d 800; *Adams v. Spillyards*, 187 Ark. 641, 61 S. W. 2d 686; *Brown v. Ferdon*, 5 Cal. 2d 226, 54 P. 2d 712; *Atlantic Loan Co. v. Peterson*, 181 Ga. 266, 182 S. E. 15; *Vanderbilt v. Brunton Piano Co.*, 111 N. J. L. 596, 169 Atl. 177; *Federal Land Bank of Cola. v. Garrison*, 185 S. C. 255, 193 S. E. 308; *J. J. Langever v. H. H. Miller*, 124 Tex. 80, 76 S. W. 2d 1025; *Hanauer v. Republic Building Co.*, 216 Wis. 49, 265 N. W. 136; *National City Bank v. Gelfert*, 284 N. Y. 13, 29 N. E. 2d 449. The last-mentioned case was decided by the state court on the basis of the Federal Constitution, New York having no constitutional prohibition against legislative impairment of contracts (*Demarest v. Mayor*, 74 N. Y. 161). Were it not for this peculiar omission in the New York Constitution, the case would not have been subject to reversal by the United States Supreme Court in *Gelfert v. National City Bank*, 313 U. S. 221.

step was taken deliberately, and only because the United States Supreme Court, in *Gelfert v. National City Bank,* 313 U. S. 221, saw fit to reverse the trend of its former decisions in the interpretation in this respect of the contracts clause of the Federal Constitution. In attempting to justify the taking of such drastic action, this court said: "A majority . . . agrees that . . . the challenged statute [the Act of 1941] may be held not to conflict with the contract clause of the state constitution, *reaching that conclusion on the ground that it is desirable to preserve uniformity of construction of the contract clauses of both state and federal constitutions:* compare *Gelfert v. National City Bank,* 313 U. S. 221." (Italics added.) Our sovereign right to interpret our own Constitution was thus surrendered to the Federal Court.

It is a well-settled principle of constitutional law, recognized and respected by the Supreme Court of the United States, that the highest state court is the final authority upon the construction of its own constitution, and that the federal tribunal has no jurisdiction whatsoever to review such a decision. "It is sufficient to say in reference to this contention that the decision of the Supreme Court of the State of Pennsylvania sustaining the statute is conclusive in this court, as to any question of conflict between it and the state constitution." *Merchants' Bank v. Pennsylvania,* 167 U. S. 461, 462. And recently, in *Wichita Co. v. City Bank,* 306 U. S. 103, 109, the present Chief Justice said: ". . . nothing requires the state courts to adopt the rule which the federal or other courts may believe to be the better one. . . ." To the same effect are *Lehmann v. Board of Accountancy,* 263 U. S. 394; *Rothschild & Co. v. Steger Piano Co.,* 256 Ill. 196, 206; *Opinion of the Justices to the Senate,* 226 Mass. 613, 617. While to achieve consistency of construction of similar clauses in both state and federal constitutions a state court in interpreting its own constitution will generally adhere to the decision of the Supreme Court of the United States in construing a similar provi-

sion in the Federal Constitution, no State should do so where such action would require a departure from previous state decisions, or where the state court is of the opinion that the weight of authority and better legal reasoning are decidedly in favor of the opposite holding: 21 C. J. S. Par. 205, p. 364. Until the decision in the *Allen* case, this Court had consistently held that the amount of the deficiency judgment could not be altered by later legislation: *White's Estate,* 322 Pa. 85, and *Beaver Co. B. & L. v. Winowich,* supra; *Knox v. Noggle,* 328 Pa. 302; *Pa. Co., Etc., v. Scott,* 329 Pa. 534; in these cases we held unconstitutional the Deficiency Judgment Acts of January 17, 1934, P. L. 243, July 1, 1935, P. L. 503, and July 2, 1937, P. L. 2751, respectively. The reasoning of the United States Supreme Court in the *Gelfert* case, which we followed in preference to our own decisions, is not persuasive. Mr. Justice DOUGLAS apparently realizing that the legislation did alter the parties' contract, attempted to justify it by the statement that (p. 231) " 'Not only are existing laws read into contracts in order to fix obligations between parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of legal order' ". This, I think, is unsound as a reason. It is nothing more than an assumption of the constitutionality of the act, because the power to pass an unconstitutional law is not one of the essential attributes of sovereign power. If an Act of Assembly can on such justification alter a mortgage contract, what solemn agreement of individuals is not exposed to legislative modifications? What legislation of any sort would be unconstitutional? Carried to its logical conclusion would this not justify a law prescribing punishment for acts which were not criminal at the time of their performance? The United States Supreme Court in the *Gelfert* case realized that its decision required the overruling of several of its previous cases, including those cited in the *Winowich* opinion. This it endeavored to justify on the ground that (p. 235) "We cannot permit the broad language which those early decisions em-

ployed to force legislatures to be blind to the lessons which another century has taught". In thus upsetting the doctrine of *stare decisis* (for they were not broad dicta, but the actual holdings of the early decisions which stood in the way) as applied to Constitutional questions, the United States Supreme Court has taken the view that the Constitution varies with the times. This is a complete negation of the underlying theory of constitutional government,[4] and it should not be sanctioned as the future policy of this Court.

In my judgment, as long as the *Allen* case remains the law of this State, we are in duty bound in construing the Pennsylvania constitution or, as a logical sequence, a Pennsylvania statute, to follow blindly the decisions of the United States Supreme Court in its interpretation of identical or similar provisions in the Federal Constitution or statutes, regardless of the fact that in so doing we overrule our previous decisions and regardless of whether sound reasons or proper public policy may convince us that the opposite holding would be the better one. As long as the *Allen* case stands, a doubt is cast upon all our rules of construction which are now in conflict with those of the United States Supreme Court; and it may now well be asked whether our past decisions which embody principles contrary to those of the highest federal court are any longer law. If we follow the *Allen* case reasoning, we would be bound to overrule such cases should the questions decided in them be brought before us again.

Because our reasoning in the *Winowich* case was correct, because the reasoning of the United States Supreme Court in the *Gelfert* case was fallacious, and be

---

[4] "Constitutions do not change with the varying tides of public opinion and desire. The will of the people therein recorded is the same inflexible law until changed by their own deliberative action, and therefore the courts should never allow a change in public sentiment to influence them in giving a construction to a written Constitution not warranted by the intention of its founders," 11 Am. Jur. p. 659, citing *Scott v. Sandford*, 19 How. 393.

cause the reason given for our decision in the *Allen* case was wrong and will lead to future uncertainty in many fields of the law, it is my opinion that we should return to the doctrine of the *Winowich* case. By so doing we will not do violence to the doctrine of *stare decisis*. Therefore, I would overrule the *Allen* case, reverse the court below in the instant case, and declare the Deficiency Judgment Act of 1941 unconstitutional as to any bond and mortgage executed prior to the passage of the act.

Mr. Chief Justice SCHAFFER and Mr Justice PARKER join in this dissent.