Dearnley, to use, Appellant, *v.* Survetnick.

Argued November 15, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ. ·

*Philip Goldberg,* for appellant.

*Israel Packel,* with him *A. D. Gordon* and *Speiser & Packel,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, January 3, 1949:

This is an appeal from an order of the court below opening a judgment and setting aside a sheriff's sale. Such a proceeding is governed by equitable principles and addressed to the sound discretion of the court, and unless there is manifest abuse in the exercise of that discretion its decree will not be disturbed on appeal: *Snyder v. Snyder,* 244 Pa. 331, 90 A. 717; *Somerville v. Hill,* 260 Pa. 477, 104 A. 62; *Mutual Building & Loan Association of Shenandoah v. Walukiewicz,* 322 Pa. 240, 185 A. 648; *Miners National Bank of Wilkes-Barre v. Bowman,* 334 Pa. 534, 6 A. 2d 286.

In 1920 defendant, David Survetnick, executed a bond in the principal sum of $5,000 secured by a mortgage on premises 3910 Germantown Avenue, Philadelphia. In 1933 plaintiff, Charles E. Dearnley, assignee of that mortgage, instituted foreclosure proceedings in the Court of Common Pleas No. 3 of Philadelphia County, entered judgment, issued execution, and, in August of that year, bought in the property at sheriff's sale for $50. Thereafter, in October, he entered judgment on the bond in the Court of Common Pleas No. 4 of Philadelphia County; he revived this judgment five years later by sci. fa. proceedings in which he obtained judgment in 1939 and assessed damages in 1941 in the amount of $7,392.82, representing the original debt of $5,000, less credit for $50 obtained at the sheriff's sale, with interest in the amount of $2,442.82 from 1933 to 1941.

On July 16, 1941 the Deficiency Judgments Act (P. L. 400) was passed, and, on a petition filed by plaintiff in Court No. 3, that court, in 1943, fixed the fair market value of the property at $4,500, at the same time directing that "each respondent hereafter proceeded against shall first be released by a writing filed by the plaintiff herein to the extent of the said fair market value less such deductions as are authorized by the aforesaid Act."

In 1943 plaintiff again started sci. fa. proceedings to revive the judgment; the revived judgment was entered in March, 1948. On March 27, 1948, plaintiff filed in Court No. 3 the release which the court had ordered, and on that same day assessed damages on the revived judgment in Court No. 4 in the amount of $3,104.90, this sum being calculated on the basis of the previous assessment of $7,392.82 less a credit for the fair market value of the property, $4,500, plus interest of $212.08 from 1941 to 1943. Also on that same day, March 27, 1948, another sci. fa. to revive the judgment was issued and the revived judgment was entered in April, the damages being now assessed at $4,087.04, representing the previous assess-

ment of $3,104.90 plus interest of $982.14 from 1943 to 1948. Plaintiff then caused a vend. ex. to be issued and, at a sheriff's sale in June, a property owned by defendant at 5811 Rising Sun Avenue, Philadelphia, was sold to the attorney on the writ for the sum of $5,775, subject to an existing mortgage of $6,337.50. Thereupon defendant, on petition, obtained a rule to have the judgment opened and the sheriff's sale set aside; the use-plaintiff (Dearnley having meanwhile assigned the judgment to one Margaret Tholl) filed an answer, and, on consideration of these pleadings, the court made defendant's rule absolute by an order from which the use-plaintiff now appeals.

The reason why the court set aside the sheriff's sale was that neither plaintiff nor use-plaintiff had complied with Rule 96(2) of the Court of Common Pleas, which requires that at or after the time of the issuance of a writ of execution for the sale of any real estate, the plaintiff, or some one on his behalf, shall give at least ten days' written notice by personal service on, or by registered mail to, the defendant in the writ and the real owner or owners of the real estate to be sold, stating the place, date, and hour of the intended sale, and shall, before the date of the sale, file an affidavit in the prothonotary's office that such notice has been given. The use-plaintiff in her answer alleged that defendant had knowledge of the intended sale, apparently basing this allegation on the averment that defendant and his wife were in actual occupancy and possession of the property when it was posted with a notice of sale. The court below held that the mere posting of the notice as required by law was not sufficient; as the court said, an execution debtor might be away during the entire time the premises were posted and the posters themselves might disappear or be removed due to vandalism, weather or other causes. The purpose of the Common Pleas rule is to make sure that actual notice is received by the defend-

ant in the execution, and not only, therefore, must such notice be given by personal service or by registered mail, but an affidavit must be filed so as to establish of record that such notice has been given as required by the rule. It was therefore proper for the court to set aside the sale, irrespective of the amount, adequate or otherwise, for which the property was sold.

As justification for seeking to have the judgment opened defendant advances three reasons. The first is that the petition to have the fair market value of the premises fixed in accordance with the Deficiency Judgments Act should have been filed in Court No. 4 in which the judgment against defendant had been entered on his bond, instead of in Court No. 3 where the mortgaged premises had been sold in the foreclosure proceedings. As to this, we are in accord with the view taken by the court below that the petition was properly filed in Court No. 3. The Deficiency Judgments Act provides (section 1) that the petition should be addressed to the court "having jurisdiction". This cannot reasonably be construed as referring to any court other than that where the sale of the property was held. A judgment might be entered against an obligor on his bond in any court of the Commonwealth or even in another State where defendant might reside, and it obviously would be impractical and undesirable to have the value of the property appraised in such other jurisdiction; it is where the property is situated, and by the court in which it was sold on foreclosure, that its value can best be determined.

Defendant's second reason is based upon the provisions of the Deficiency Judgments Act (section 6) that after the determination by the court of the fair market value of the property the debtor shall be released and discharged of his liability to the extent of such value, "and *thereupon* petitioner may proceed by appropriate proceedings to collect the balance of the debt." From this it is urged that plaintiff had no right to institute sci.

fa. proceedings to revive the judgment in 1943 *until* he had filed the release of liability, which he did not do until 1948. Although the court below approved this argument, in our opinion it lacks merit because the filing of such a release as was ordered by the court is not required by the Deficiency Judgments Act. The Act merely provides that after the fair market value of the property has been determined the debtor shall be "released and discharged" of the liability to that extent,—not by any voluntary action on the part of the plaintiff or writing filed by him, but as the automatic result of the court's having fixed the amount of the fair market value and therefore of the credit to be allowed. Accordingly plaintiff was justified in proceeding as and when he did for the purpose of collecting the balance of the debt.

The third reason advanced by defendant rests on firmer ground and fully justified the court's action in opening the judgment because of the wholly excessive assessment of damages. In *Pennsylvania Company v. Scott,* 346 Pa. 13, 17, 18, 29 A. 2d 328, 330, it was pointed out that the Deficiency Judgments Act treats the purchase of the mortgaged premises by the execution creditor at the sheriff's sale as a payment of the debt due him to the extent of the fair market value of the property, just as if he had then received the amount of such value in cash. When Dearnley bought the mortgaged premises at sheriff's sale in August, 1933, and received a deed therefor from the sheriff, the property being, as later determined by the court, of the fair market value of $4,500, there then and there remained due to him only $500 of the principal of defendant's original obligation; the fact that the Deficiency Judgments Act was enacted subsequent to that sale is immaterial because, as stated in *Pennsylvania Company v. Scott,* supra (p. 18, A. p. 330), "the retroactive application of the statute to a sale previously held does not thereby impair any property right in the judgment on which the sale was had . . . ,

since the Act deals only with the valuation of a payment in property made on account of the judgment." Plaintiff cannot charge interest on the sum of $4,500 from the time of the sheriff's sale in 1933 to 1941, as is now being attempted, any more than he could charge such interest if he had been paid that same amount in cash at the time of the sale: *Sophia Wilkes Building & Loan Association v. Rudloff*, 348 Pa. 477, 483, 35 A. 2d 278, 281.

The order of the court below is affirmed.