**UNITED STATES of America,
Appellant,**

v.

**George E. SHIMER.**

**No. 13067.**

United States Court of Appeals
Third Circuit.

Argued Feb. 18, 1960.

Decided April 8, 1960.

Anthony L. Mondello, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Walter E. Alessandroni, U. S. Atty., Philadelphia, Pa., Samuel D. Slade, Attorney, Department of Justice, Washington, D. C., on the brief), for appellant.

Edward Davis, Philadelphia, Pa., for appellee.

Before BIGGS, Chief Judge, and STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

█ Is the amount the Veterans Administration can recover on its contract of indemnity with a Pennsylvania veteran limited to the amount which the veteran owes his mortgagee at foreclo-

sure, and must that amount be computed in accordance with Pennsylvania law, including the Pennsylvania Deficiency Judgment Act?[1]

The facts as taken from the stipulation entered into by the parties are as follows: Appellee, George E. Shimer, obtained a loan of $13,000 from the Excelsior Saving Fund and Loan Association (Association) on January 12, 1948, to purchase residential realty in Whitemarsh Township, Montgomery County, Pennsylvania. The loan was evidenced by a bond and secured by a mortgage on the property issued to the Association on the same date, January 12, 1948, both having been executed by George E. and Mildred F. Shimer, his wife. The loan was to be repaid with interest at 4 per cent per annum in monthly installments of $78.78 over a term of twenty years. Within a month appellee, an eligible veteran, applied to the Veterans Administration (V.A.) for guaranty of said loan pursuant to the provisions of Title III of the Servicemen's Readjustment Act of 1944, as amended, 59 Stat. 626, 38 U.S.C. § 694 et seq. (now 38 U.S.C. § 1801 et seq.), on V.A. Form 4–1820, "Home Loan Report." Shortly thereafter, on February 11, 1948, the V.A. approved the application and issued V.A. Form 4–1899, "Loan Guaranty Certificate," guaranteeing "subject to the Servicemen's Readjustment Act of 1944, as amended, Public Law 268, 79th Congress, and the regulations issued thereunder to the date of this certificate, 37.38 per cent of the indebtedness outstanding from time to time under the loan identified above." Pursuant to the provisions as applied to this $13,000 loan, the guaranty amounted to $4,000. Appellee defaulted on May 12, 1948, and continued in default. On April 12, 1949, the Association filed a Notice of Intention to Foreclose with the V.A., and on May 12, 1949, entered judgment in the Court of Common Pleas of Montgomery County, Pennsylvania, at No. 351, April Term, 1949, to foreclose the mortgage on the property purchased with the loan.

1. 12 Purdon's Pa.Stat.Ann. § 2621.1 et seq.

Sheriff's sale followed on June 29, 1949, where the property was purchased for $250 by the Association. The Association thereupon filed a claim with the V.A. for payment of the $4,000 loan guaranty on July 8, 1949, and the V.A. paid this amount on October 7, 1949. While this claim was pending before the V.A., the Association sold the property to third parties for $10,500. At no time did the Association comply with the provisions of the Pennsylvania Deficiency Judgment Act.

This action was initiated in the District Court for the Eastern District of Pennsylvania by the United States to recover the sums paid by the V.A. to the Association. The government asserted it was entitled to recover under either of two counts. The first count was based on its rights as a subrogee of the Association,[2] and the second count was based on a right of indemnity. An answer was filed by the appellee alleging that no obligation existed under either theory inasmuch as the mortgagee after it purchased the property at judicial sale had failed to file a petition to fix the fair market value of the property pursuant to the Pennsylvania Deficiency Judgment Act. The government thereafter filed a motion for judgment on the pleadings which was denied by the district judge in an opinion issued December 17, 1958. The parties entered into a stipulation of facts, and the district court thereafter granted appellee's motion for summary judgment on June 24, 1959, under Rule 56(b), Fed.Rules Civ. Proc. 28 U.S.C.

On appeal the government contends that it is entitled to indemnity for the loss which it suffered as guarantor of the loan on the basis of a valid regulation binding upon the appellee that is not impaired or limited in any way by the provisions of Pennsylvania law concerning deficiency judgments. The government asserts that "the court below has grafted onto the rights and liabilities running between the United States and defendant [appellee] in their independent contract of indemnity, state law considerations *which have point only respecting the relationship between defendant and the bank in the first instance*, or secondarily between the defendant and the bank's subrogee. We think it clear that state law control of this latter relationship can affect only those rights which the subrogee takes through the bank, and can not affect other rights independently transacted." (Emphasis supplied.)

■ We agree with the government that an independent indemnity relationship was created by the veteran's application for guaranty of his loan. We further agree that the terms of that guaranty are governed by the Servicemen's Readjustment Act of 1944, as amended, (Veterans Act) and the regulations promulgated pursuant thereto. Although Section 506 of the Act, 38 U.S.C. (1952 ed.) § 694g, entitled "Procedure on default," authorizes payment of the guaranty by the V.A. in the case of each and every default, it does not purport to spell out the amount which is to be paid; it merely refers to the guaranty. The House Report of the Committee of Conference, dated December 17, 1945, U.S.Code Cong.Serv., 79th Cong., 1st Sess. (1945) 938–939, in considering the procedure on default, stated that "In the event the veteran defaulted in payment of his loan and after suit on foreclosure and sale *the deficiency was determined*, then upon notification from the lender, the Administrator would pay to the lender its guaranty not in excess of $2,000 and not in excess of *the deficiency*, and be subrogated to the rights of the lender to the extent of the amount paid on the guaranty." (Emphasis supplied.) [3]

---

2. The government has evidently abandoned its claim as subrogee, for in its appeal it has not raised that issue.

3. The Senate Bill was substituted for the House Bill; however, on page 940 of the same report, it is stated: "Section 506, relating to procedure on default, is retained substantially as in the House bill."

■ An examination of the Act fails to disclose any attempt on the part of Congress to supplant state law for determining the amount of the deficiency on the loan between the mortgagor and the mortgagee, which deficiency, up to the statutory limit, is the amount and the only amount which may be paid by the V.A. under the guaranty. The regulations promulgated under the Act make it equally clear, as we later demonstrate, that state law was intended to be followed in determining the amount of the indebtedness to which the guaranty related.

Although the government concedes, as we have heretofore noted, that state law applies to the basic indebtedness between the mortgagor and the mortgagee, it maintains that state law does not apply to the indemnity agreement between the veteran and the government. It seemingly asserts that it can recover under the indemnity agreement whatever amount it paid to the mortgagee. The amount payable under the indemnity agreement, however, is limited to the amount which the V.A. under the statute is *required* to pay on its guaranty and not the amount which it actually pays. As we have indicated, the amount which it is legally required to pay is the deficiency on foreclosure. That deficiency represents the then indebtedness between the mortgagor and the mortgagee.

The government principally relies on a regulation, since modified, which stated that "Any amounts paid to the creditor by the Administrator pursuant to the guaranty shall constitute a debt due to the United States by the veteran on whose application the guaranty was made * * *." 38 Code Fed.Regs. (1944 Supp.) § 36.4043. This is hardly persuasive, for that regulation was modified to read "Any amounts paid by the Administrator *on account of the liabilities* of any veteran guaranteed or in-sured under the provisions of the act shall constitute a debt owing to the United States by such veteran." 38 Code Fed.Regs. (1949 ed.) § 36.4323(e). In any case, even under the earlier regulation the amounts to be paid were regulated by the guaranty, and this was intended only to reimburse the mortgagee in an amount not to exceed the loss he might suffer through default computed as of the date of foreclosure. See 38 Code Fed.Regs. (1956 rev.) § 36.4320(a) (3) (iii) and (4) (d). Since the section in the regulations upon which the government relies, i. e., 38 Code Fed.Regs. (1949 ed.) § 36.4323(e), refers to the "liabilities of any veteran" (to the mortgagee) and the entire Veterans Act refers to an underlying obligation created by state law, we are convinced that federal law requires a referral to the state law in this instance.

In addition, Section 36.4321, entitled "Computation of guaranty claims; subsequent accounts," specifically indicates such a procedure in subsection (a), for it provides:

"Subject to the limitation that the total amounts payable shall in no event exceed the amount originally guaranteed, the amount payable on a claim for the guaranty shall be the percentage of the loan originally guaranteed applied to the indebtedness computed as of the date of claim but not later than (1) the date of judgment or of decree of foreclosure * * *. *Deposits or other credits or set-offs legally applicable to the indebtedness* on the date of computation *shall be applied in reduction of the indebtedness* on which the claim is based. Any escrowed or earmarked funds not subject to superior claims of third persons must likewise be so applied." (Emphasis supplied.) [4]

4. If this or any other regulation issued by the Administrator be interpreted to deny to the veteran-mortgagor the defense of payment to the mortgagee either partial or complete such regulation would be invalid as being contrary to the Act. See 38 U.S.C. (1952 ed.) § 694(b), presently codified in 38 U.S.C. (1958 ed.) § 1803(b), (c) and (d).

Certainly, one must refer to state law to discover what credits or set-offs are legally applicable to the indebtedness between the mortgagor and the mortgagee. In the instant case where Pennsylvania law is applicable, including the Pennsylvania Deficiency Judgment Act, on the critical date, the date of judgment or of decree of foreclosure, the appellee had a set-off or credit. The Pennsylvania law provides that where the mortgagee purchases the property at foreclosure, the fair market value of the property must be applied against the debt.[5] It also provides a method of determining fair market value. If the mortgagee considers the fair market value to be less than the debt he may have appraisers appointed to have the amount fixed. In effect, the mortgagor is given a legal credit or set-off against the amount of indebtedness owing the mortgagee to the extent of the fair market value of the security which the mortgagee has obtained.[6] Thus this squarely brings the present case within the regulation cited above.

The second string to the government's bow is the administrative decision rendered in 1945 by the Administrator of Veterans' Affairs, 1 Decisions of Administrator of Veterans' Affairs No. 625, pp. 1154–1164 (Jan. 22, 1945). Basically, this administrative opinion is concerned with states where the mortgagee is completely barred from proceeding against the mortgagor even for an actual deficiency in the event of default. It is worthy of note that Pennsylvania does not do so, but merely limits the recovery by the mortgagee to the amount of the actual deficiency after giving credit for the fair market value of the property taken over by the mortgagee. We agree with the opinion insofar as it asserts that Congress intended the Veterans Act to be beneficial to veterans throughout the country. Of course, in those states where no deficiency judgments are permitted and thus the mortgagee is completely deprived of its right to collect the full amount of indebtedness, the Act would be ineffectual. In such cases the state law must be presumed to be inap-

5. In Sophia Wilkes Bldg. & Loan Ass'n to Use of Wiehe v. Rudloff, 1944, 348 Pa. 477, 35 A.2d 278, it was stated:
"' * * * The act, recognizing plaintiff's right to recover the full amount of the judgment, merely provides for an inquiry in regard to a transaction which occurred subsequent to the judgment, to wit, [what occurred at] the sheriff's sale, in order to ascertain what amount of payment plaintiff has received, such an inquiry being analogous to the trial of an issue of payment raised as a defence * * *.'" 35 A.2d at page 280.
"* * * [T]he defendant is entitled to have the judgment against him satisfied of record, for it has been discharged as completely and effectually as if it had been actually paid off in cash." 35 A.2d at page 280.
"We merely recognize and give effect to the repayment of the judgment debt which the plaintiff has already received through his purchase at the sheriff's sale of a property of the defendant which is now presumed in law to have been worth the full amount of the judgment." 35 A. 2d at page 281.
"It was the receipt of a property worth the amount of the judgment which dis-

charged it. The Deficiency Judgments Act merely compelled effect to be given to that fact. We do not know, nor do we think it important, whether the property was actually worth the full amount of the judgment. It may be assumed that it was, for, if it was not, the plaintiff would have moved, before the expiration of the period of limitation prescribed by the Act, to have a lesser value fixed for the property. However that may be, the Act itself has now created a conclusive presumption that the property was worth at least one hundred percent of the judgment." 35 A.2d at page 281.
In accord, Union Trust Co. of New Castle v. Tutino, 1945, 353 Pa. 145, 44 A.2d 556; Pennsylvania Co. for Insurances on Lives and Granting Annuities v. Scott, 1942, 346 Pa. 13, 29 A.2d 328, 144 A.L.R. 849.

6. If the property had been purchased by a third party at the sale, resulting in the receipt by the mortgagee of an amount of cash equal to or in excess of the amount of the debt, the Administrator could hardly claim that the veteran could not raise the defense of payment in full in an action brought against him on his indemnity contract.

plicable. However, if the Administrator's decision be interpreted as providing that all state laws for the determination of the actual amount of the indebtedness existing at the time of foreclosure are superseded, we must emphatically disagree. We find nothing in the Veterans Act that would lead us to that conclusion and much that convinces us that Congress never intended to deprive veteran-mortgagors of the benefits of Acts such as the Pennsylvania one that is clearly ameliorative. Certainly there was no intention to put these individuals in a worse position than nonveteran-mortgagors.

The V.A. also relies upon the case of McKnight v. United States, 9 Cir., 1958, 259 F.2d 540. It claims that case holds that all state laws upon the subject of deficiency judgments are superseded by the Veterans Act. There the court held that it need not determine whether the California Deficiency Judgment Act, West's Ann.Cal.Code Civ.Proc. § 580b, applied because under settled principles of mortgage law, "the value of the mortgagor's equity in the mortgaged property is fixed by the amount bid at the foreclosure sale, and * * * in the absence of fraud, a mortgagor has no right to compel the mortgagee to account to him for any profit made upon a subsequent resale of the premises." 259 F.2d at page 544.[7] With this we agree. The case merely stands for the proposition that the amount of the liability of a veteran to the United States is fixed at the time of foreclosure and that subsequent sales of the property can neither decrease nor increase this liability. There is no holding in the case that the amount received by the mortgagee at foreclosure is determined by federal law, and that, of course, is what we must determine in this case.

One other aspect of the Pennsylvania Act deserves our attention. It provides that if no action is taken within the six-month period, not only is the indebtedness to the mortgagee satisfied but the obligor, *guarantor*, or anyone else liable directly or indirectly to the mortgagee is released. This strikingly points up the difference between the Pennsylvania and California Acts, for the latter has been held not to apply to guarantors. Security-First National Bank of Los Angeles v. Chapman, 1940, 41 Cal.App. 2d 219, 106 P.2d 431.

The government's contention that it paid the entire amount of its guaranty prior to the end of the six-month period leads once again to the central question. On what basis did it compute the indebtedness of the mortgagor to the mortgagee so that the amount to be paid under the guaranty, in accordance with the statute and regulations, could have been ascertained? Until the mortgagee indicated, by taking steps under the Pennsylvania Act that it was not satisfied that the fair market value of the property which it then held [8] was at least equal to the indebtedness, there was no way of calculating any liability of the veteran and in turn any liability of the government on its guaranty. In the absence of such action on the part of the mortgagee within the six-month period, its claim against the veteran was fully satisfied by the security and the guarantor (V.A.) was released.

The judgment will be affirmed.

---

**7.** Four district court cases, which treat the problem rather summarily, are in accord with the government's position. United States v. Ryder, D.C.N.D.Ga.1958, 168 F.Supp. 263; United States v. Jones, D.C.M.D.Ga.1957, 155 F.Supp. 52; United States v. Gallardo, D.C.N.D.Cal. 1957, 154 F.Supp. 373; United States v. Henderson, D.C.S.D.Iowa 1953, 121 F.Supp. 343. None of these cases involved a statute such as that in the instant case, and more particularly none considered how the guaranty was to be computed. Rather they assumed that the payment by the government to the mortgagee was authorized under the statute and regulations.

**8.** It must be remembered that the mortgagee is not forced or required to bid in the property, in which event the amount bid by the third party would be credited on the debt.