470 A.2d 938

**FIRST PENNSYLVANIA BANK, N.A., Appellant,**

**v.**

**LANCASTER COUNTY TAX CLAIM BUREAU and Della Becker, Appellees.**

Supreme Court of Pennsylvania.

Argued April 20, 1982.

Reargued Oct. 24, 1983.

Decided Dec. 30, 1983.

Richard M. Shusterman, Lawrence T. Bowman, Philadelphia, for appellant.

Maurice M. Green, Philadelphia, for Della Becker.

David Greer, Lancaster, for Lancaster County.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

HUTCHINSON, Justice.

On May 19, 1982 our Court filed an order dismissing this appeal by allowance as improvidently granted. Appellant then appealed to the United States Supreme Court, —— U.S. ——, 103 S.Ct. 3528, 77 L.Ed.2d 1381 (1983), which vacated our order, 498 Pa. 122, 445 A.2d 97, and remanded the

record to us for further consideration in light of its subsequent decision in *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983).

The case was and is before us on appeal from an order of Commonwealth Court, 44 Pa. Commonwealth Ct. 301, 404 A.2d 709 which affirmed a final decree of the Court of Common Pleas of Lancaster County. An *en banc* Common Pleas Court affirmed an adjudication and decree nisi entered by a Common Pleas judge sitting in equity. The Chancellor had dismissed a complaint in which appellant-mortgagee sought to set aside a tax sale made pursuant to the Real Estate Tax Sale Law, to cancel the Tax Claim Bureau deed to appellee, the purchaser at the tax sale, and to reinstate and confirm a first mortgage which was discharged by the tax sale.

The first question presented on remand is whether the notice provision contained in Pennsylvania's Real Estate Tax Sale Law, Act of July 7, 1947, P.L. 1368, No. 142, *as amended,* 72 P.S. § 5860.101 *et seq.,* which does not require either personal service or notice by mail to a record mortgagee of an impending tax sale, violates the due process rights conferred on such a mortgagee under the Pennsylvania and United States Constitutions. The notice provision in the Pennsylvania statute is plainly unconstitutional under the standard set forth by the United States Supreme Court in *Mennonite Board.* The second question, first raised by appellee in this Court on her application to quash this appeal, involves an interpretation of our Deficiency Judgment Act. Specifically we must decide whether a mortgagee who holds mortgages on several separate parcels in different counties as security for a single loan triggers the provisions of that Act by its purchase of one of the parcels at the execution sale following his first successful foreclosure action. We hold that the Deficiency Judgment Act does not apply to the facts of this case.[1] Therefore, we

1. Our consideration of this issue is necessary to the final determination of this case in which appellant seeks to set aside a tax sale and thus reinstate its mortgage to the ultimate end of starting a foreclo-

reverse Commonwealth Court and remand the record to Common Pleas.

In 1972 Bernard DiSabatino purchased a parcel of unimproved land in Millersville Borough, Lancaster County. In 1973 appellant and DiSabatino Construction Company entered into an agreement in which appellant Bank agreed to lend the Company $850,000.00 to repay existing obligations and for working capital. In addition, the agreement provided that the appellant, in its discretion, could advance an additional $250,000.00 to the borrower. At the same time, Bernard DiSabatino executed and delivered to the appellant a promissory note in the amount of $1,100,000.00 secured by five mortgages. The mortgages were on properties owned by Bernard DiSabatino located in four Pennsylvania counties and included the Lancaster County real estate. The amount of each mortgage was $1,100,000.00. The mortgage on the Lancaster County property, a first mortgage, was given by John DiSabatino and Bernard DiSabatino and was recorded on April 25, 1973. That mortgage has been in default since April 26, 1974.

At the time appellant recorded its mortgage, Bernard DiSabatino owed 1972 real estate taxes on the property, which had become a lien by their return to the county. Accordingly, appellant's mortgage lien on the property was junior to the tax lien and therefore dischargeable by tax sale. *See* 72 P.S. § 5860.609.[2]

sure on the property here in question. Thus, the fact that the Act had not been triggered when this action started is of no moment, because the foreclosure appellant seeks to begin if it is successful here must obviously come more than six months after its purchase at the execution sale on its first foreclosure.

**2.** Section 5860.609 provides:
 Every such sale shall discharge the lien of every obligation, claim, lien or estate with which said property may have or shall become charged, or for which it may become liable, except no such sale shall discharge the lien of any ground rent or mortgage which shall have been recorded before such taxes became liens, and which is or shall be prior to all other liens, except other mortgages and grounds rents.

DiSabatino owned two properties in Lancaster County. He was sole shareholder of Lynnebrook Apartments, Inc. which owned a tract of land contiguous to the property subject to the mortgage held by the appellant. Frank O'Donnell, Esquire, represented both DiSabatino and St. Paul Title Insurance Company at the closing of the mortgage executed in connection with appellant's loan to DiSabatino. Before the mortgage settlement, DiSabatino personally gave O'Donnell bills for real estate taxes owed on the Lynnebrook Apartments tract. O'Donnell paid these bills under the mistaken belief that he was paying back taxes on the adjoining property which is the subject of the instant lawsuit. The receipts for these tax payments showed the map number for Lynnebrook Apartments, Inc., not for the contiguous parcel. O'Donnell never inquired as to the title designation referred to on the receipts. Moreover, in all his correspondence with the Lancaster County Tax Claim Bureau, O'Donnell merely stated that the enclosed tax payments were made on behalf of Bernard DiSabatino without identifying the property by description and map number.

As a result of the continuing tax delinquency with respect to the property on which appellant held a mortgage, the Tax Claim Bureau scheduled a sale of the property for October 19, 1974. Published notice of the impending sale appeared in two Lancaster newspapers, once a week for three consecutive weeks. In addition, notice of the sale appeared in the Lancaster Law Review one week before the scheduled sale.

The sale was held as scheduled and Heywood Becker, Esquire, as agent for his mother, the appellee, purchased the property for $854.88, the upset price. The Court of Common Pleas found that the fair market value of the land at the time of the sale was $185,000.00. Appellant did not receive personal or mailed notice of the sale and learned of it after the sale occurred and, apparently, after the redemption period provided for in the Real Estate Tax Sale Law had run. *See* 72 P.S. § 5860.501 (Supp.1983–84).

Throughout these proceedings appellant has argued that the notice provision contained in the Real Estate Tax Sale Law, 72 P.S. § 5860.602, is unconstitutional because it does not require personal or mailed notice to a record mortgagee. Appellant correctly points out that the statute provides generally for notice by publication and posting and requires notice by certified mail only to owners of the affected property.[3] Appellant further notes that mortgagees are not

3. Specifically, Section 5860.602, *as amended* by the Act of September 27, 1973, P.L. 268, No. 74, § 6, at the time the events in question occurred, read in pertinent part as follows:

Notice of sale

Prior to any scheduled sale the bureau shall give notice thereof, once a week for three (3) consecutive weeks in two (2) newspapers of general circulation in the county, if so many are published therein, and once in the legal journal, if any, designated by the court for the publication of legal notices. Such notice shall set forth (a) the purposes of such sale, (b) the time of such sale, (c) the place of such sale, (d) the terms of the sale including the approximate upset price, (e) the descriptions of the properties to be sold as stated in the claims entered, each description commencing with

" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Name of Owner

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . "

description

Where the owner is unknown and has been unknown for a period of not less than ten years, the name of the owner need not be included in such description.

The description may be given intelligible abbreviations.

Such published notice shall be addressed to the "owners of properties described in this notice and to all persons having tax liens, tax judgments or municipal claims against such properties."

In addition to such publications, similar notice of the sale shall also be given by the bureau, at least ten (10) days before the date of the sale, by United States certified mail, personal addressee only, return receipt requested, postage prepaid, to each owner as defined by this act and by posting on the property.

The published notice, the mail notice and the posted notice shall each state that the sale of any property may, at the option of the bureau, be stayed if the owner thereof or any lien creditor of the owner on or before the date of sale enters into an agreement with the bureau to pay the taxes in instalments, in the manner provided by this act, and the agreement entered into.

. . . .

No sale shall be defeated and no title to property sold shall be invalidated because of proof that mail notice as herein required was not received by the owner, provided such notice was given as prescribed by this section.

"owners" under the statutory definition. *See* 72 P.S. § 5860.102 which states:

"Owner," the person in whose name the property is last registered, if registered according to law, and in all other cases means any person in open, peaceable and notorious possession of the property, as apparent owner or owners thereof, or the reputed owner or owners thereof, in the neighborhood of such property; as to property having been turned over to the bureau by any county, "owner" shall mean the county.

In *Mennonite Board,* the United States Supreme Court was confronted with the identical question raised here, *i.e.,* whether notice by publication and posting provides a mortgagee of real estate with adequate notice of a proceeding to sell the mortgaged property for non-payment of taxes. There, that court held that in order to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, "[w]hen the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service." *Id.* at ——, 103 S.Ct. at 2711. We are bound to follow that holding by the Supremacy Clause of the United States Constitution, Article VI, Section 2.

The quoted notice provision of Pennsylvania's statute appears to fail the foregoing test of constitutionality because it includes only owners and not mortgagees within the class of persons given notice. Appellee, however, directs this Court's attention to the differences between our law and the Indiana statute considered by the United States Supreme Court. Specifically, appellee notes that the lien divestiture provisions of the Indiana statute discharged all mortgages, whenever recorded, but the Pennsylvania Real Estate Tax Sale Law discharges only those mortgages recorded after the tax lien has attached.[4] Therefore, she argues that lien creditors have constructive notice of the

4. *See* 72 P.S. § 5860.609.

lien under our statute, from the record of taxes returned as liens, to protect their interest in the affected property and that such constructive notice is constitutionally sufficient.

Indeed, the record shows that appellant had record and actual notice of the tax lien, but failed to take appropriate measures to protect its interest in the real estate in question because of its mistaken understanding that Mr. O'Donnell had paid the taxes owed on the property. That appellant was not apprised of the subsequent tax sale may be attributed to Mr. O'Donnell's actions and not to the inadequacies of the Act's notice provision.

However, from the Court's discussion in *Mennonite Board,* it is apparent that the notice provision in our statute is not saved by this distinction. Specifically, the Court stated that:

> [a] mortgagee's knowledge of the delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending. The latter "was the information which the [County] was constitutionally obliged to give personally to the appellant—an obligation which the mailing of a single letter would have discharged."

*Id.* at ——, 103 S.Ct. at 2712 (quoting *Schroeder v. City of New York,* 371 U.S. 208, 214, 83 S.Ct. 279, 283, 9 L.Ed.2d 255 [1962] ).

The majority states in *Mennonite Board* that "[s]ince a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale." *Id.* 462 U.S. at ——, 103 S.Ct. at 2711. Mortgagees as a class, generally, may well be sophisticated creditors with ample resources to safeguard their interests. *See id.* at ——, 103 S.Ct. at 2714 (dissenting opinion). If so, the published notice provided by our statute is, in fact, reasonably calculated to inform mortgagees of scheduled tax sales of property in which they hold an interest, and thus should pass constitutional muster. Moreover, the United States Supreme Court itself has held that it is not its responsibility to prescribe the precise manner of notice that our Commonwealth must adopt. *See Greene v.*

*Lindsey,* 456 U.S. 444, 455, n. 9, 102 S.Ct. 1874, 1880, n. 9, 72 L.Ed.2d 249 (1982).

For these reasons, we, like the dissenters in the United States Supreme Court, are troubled by the statements of that court's majority that "a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation" and that a state may not "forego even the *relatively modest* administrative burden of providing notice by mail to parties who are particularly resourceful." *Mennonite Board,* 462 U.S. at ——, 103 S.Ct. at 2712 (emphasis added).

Nevertheless, the decision in *Mennonite Board* unquestionably controls the instant case. Accordingly, under *Mennonite Board,* the notice provision in Pennsylvania's Real Estate Tax Sale Law violates the due process rights of record mortgagees.

However, appellee argues for the first time on this appeal, that even if the statutory notice provisions are unconstitutional, appellant's interest in the Lancaster County property has been divested by the Deficiency Judgment Act, Act of July 16, 1941, P.L. 400, 12 P.S. § 1261.1 *et seq.,* substantially re-enacted by the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, § 2 (effective June 27, 1978), 42 Pa.C.S. § 8103 *et seq.*[5]

Our Legislature passed the Deficiency Judgment Act during the Depression to remedy a deeply unsettling injustice which then existed; specifically, an execution creditor who purchased real estate for a nominal sum at a forced sale was entitled to retain the full amount of his judgment against the debtor. *Philip Green & Son, Inc. v. Kimwyd, Inc.,* 410 Pa. 202, 204, 189 A.2d 231, 232–33 (1963). The Act removed this injustice by reducing the creditor's judgment by the fair market value of the property instead of its minimal sale price. *See* 42 Pa.C.S. § 8103(c). Thus, under the Act, before an execution creditor may proceed against the debtor's other property, he must petition the court to

5. For convenience, considering such re-enactment, citations and quotes are hereafter from the Judicial Code.

establish the fair market value of the real estate within six months of the forced sale at which he purchased the property. *See* 42 Pa.C.S. § 8103(a) and (d). If no petition is filed within the prescribed six-month period, certain specified persons including the judgment debtor and any person interested in real estate which would be bound by the deficiency judgment, may petition the court to have the judgment marked satisfied and discharged. 42 Pa.C.S. § 8103(d).

Appellee asserts that appellant foreclosed on three of the mortgages given by DiSabatino to secure the $1,100,000.00 loan and subsequently purchased these properties at sheriffs' sales. By appellee's own admission these purchases took place after the trial in this case. Appellee's Supplemental Reproduced Record at 2. Appellant admits these facts. *See* Memorandum in Opposition to Petition and Motion to Quash Appeal at 9. Appellee further maintains that, with respect to each of the three mortgaged properties, appellant failed to file a petition to fix the fair market value of the property within six months of the sheriff's sale as required by the Deficiency Judgment Act. Appellee, therefore, concludes that DiSabatino's debt to appellant has now been deemed satisfied by operation of law and that the mortgages on all the properties, including that on the Lancaster County tract, are discharged.[6] *See, e.g., Union Trust v. Tutino*, 353 Pa. 145, 149, 44 A.2d 556, 558 (1945) ("[p]ayment of the debt secured by the mortgage discharges the mortgagor's liability on both the bond and mortgage"). In addition, appellee claims that she is a "person interested in . . . real estate which would . . . be bound by

---

**6.** The direct procedural way to raise this issue is by petition to satisfy pursuant to 42 Pa.C.S. § 8103(d) in the county in which appellant first purchased a mortgaged parcel at execution sale. Indeed, appellee did this in Delaware County and after its petition was dismissed failed to appeal. On that basis appellant argues appellee not only improperly by-passes 8103(d) by raising the issue on its motion to quash this appeal, but is indeed collaterally estopped. While this argument is appealing it is first raised in a footnote to a reply brief to which there has been no response. Therefore, we prefer to decide the case on the alternate ground that the Deficiency Judgment Act does not apply and bring this longstanding litigation to an end.

the judgment" and, as such, is entitled to the substantive protection afforded by Section 8103(d) of the Act.

In reply, appellant contends that the Deficiency Judgment Act is not applicable to the facts of this case. Appellant correctly notes that the objective of the Deficiency Judgment Act is to relieve a debtor of further personal liability to his creditor wherever the debtor's property has been sold in execution for less than the judgment debt. *Cheltenham Fed. Sav. & Loan Assoc. v. Pocono Sky Enterprises, Inc.*, 305 Pa.Superior Ct. 471, 479, 451 A.2d 744, 748 (1982). Appellant argues that the Act comes into play only when the lien creditor pursues his debtor personally on his obligation and has no application where the mortgagor elects only to institute *in rem* foreclosure proceedings which it argues is all it ultimately seeks to do here.

Appellant asserts that it foreclosed on three properties securing DiSabatino's loan and then purchased them at sheriff's sales in accordance with terms of a settlement agreement between appellant and the DiSabatinos under which the bank agreed to look only to the real estate in the four counties and not to pursue the mortgagors personally. *See* Reply Brief for Appellant at 13, n. 10. Thus, appellant concludes that since it appellee has not sought or obtained a personal judgment against the DiSabatinos in Lancaster County or in any other county, appellee is not included among the persons who have standing to invoke Section 8103(d) of the Deficiency Judgment Act. *Id.* at 8. These facts are not contradicted.

In our modern society, lenders frequently extend loans and take, as security, mortgages on properties located in several counties. This is particularly true where, as in this case, the debtor is a developer of residential and commercial properties. Where the mortgaged properties securing one loan are separate parcels in different jurisdictions, it is virtually impossible to proceed against all the properties in one execution.[7] Thus, we do not think *Tutino* which in-

7. This is because of the interaction between Pa.R.C.P. 1142 dealing with venue in mortgage foreclosure actions, Pa.R.C.P. 3163 allowing a

volved a creditor's election to execute a personal judgment against one of two parcels in the same county controls here. A lender, who necessarily issues successive executions on mortgaged property to collect his debt, and who is required to petition the court for a deficiency judgment in connection with every individual foreclosure action, will perceive that the value of its collateral has been significantly reduced. Lending institutions' reluctance to extend financing under these circumstances would be likely to significantly reduce the credit available to enterprises with real estate in several counties.

Under appellee's theory, a mortgagee would have to proceed against every mortgage securing the debtor's obligation in a single execution in order to avoid application of the Deficiency Judgment Act. We believe a creditor who has bargained for a specific lien on several parcels should, instead, be able to issue successive executions against those specific parcels until he collects his debt from various parcels of the debtor's real estate. However, appellee contends that if the creditor so proceeds, and the first parcel is sold to him by the sheriff for an amount less than the debt owed, he cannot institute foreclosure proceedings against a second parcel unless he obtains a deficiency judgment with respect to the first.

Appellant observes that the practical effect of appellee's construction of the Act is to force mortgagees to obtain a deficiency judgment simultaneously with every mortgage foreclosure. This result, the Bank claims, is fundamentally inconsistent with the policy objective of the Act, *i.e.*, to protect a debtor from personal liability by limiting liability to the fair market value of real estate collateral. *See* Appellant's Reply Brief at 17. We agree with appellant on this point and therefore need not deal with its other arguments on the deficiency judgment issue.

single execution only where land in more than one county consists of a single tract, and the fact that our rules do not require the counties to all hold sheriff's sales at the same time.

Therefore, the order of the Commonwealth Court is vacated and the record remanded for proceedings consistent with this opinion.

ZAPPALA, J., files a concurring opinion in which NIX, LARSEN and McDERMOTT, JJ., join.

ROBERTS, C.J., concurs in the result.

ZAPPALA, Justice, concurring.

I agree with the majority that the notice provision of the real estate tax sale act must be held to be unconstitutional in light of *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). I would find that such holding disposes of the case and makes it unnecessary to reach the issue of the applicability of the deficiency judgment act. I do not join that part of the majority that discusses the deficiency judgment act issue. Such discussion should be regarded as dictum.

NIX, LARSEN and McDERMOTT, JJ., join in this concurring opinion.