479 A.2d 940

**In re UPSET SALE, TAX CLAIM BUREAU OF BERKS COUNTY.**

**Roland S. and Louella V. NOLF, h/w, Appellants,**

**v.**

**ESTATE OF Marie C. SCHUMO, Deceased, Appellee.**

Supreme Court of Pennsylvania.

Argued Jan. 26, 1984.

Decided June 28, 1984.

328

James A. Cunningham, Norristown, for appellants.

John M. Stott, Reading, for Ray Calvin Miller, Jr., exceptant to tax sale.

Elliott Goldstan, Reading, for Solicitor for Tax Claim Bureau.

Annabella Mosser, in pro. per.

C. Thomas Work, Clinton Najarian, Reading, for Schumo Estate.

Catherine R. Barone, Deputy Atty. Gen.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This is a direct appeal to us by Roland S. and Louella V. Nolf, his wife, (Appellants) pursuant to the provisions of the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, Section 2, 42 Pa.C.S. Section 722 (1980) from the final order of the Court of Common Pleas of Berks County of July 16, 1982, which held unconstitutional certain provisions of the Pennsylvania Real Estate Tax Sale Law, Act of July 7, 1947, P.L. 1368, Art. VI, Section 602, *as amended*, 72 P.S. Section 5860.602, and invalidated the tax sale of the property of Annabella D. Mosser (Mosser).

Mosser holds title to some ten acres of real property in Exeter Township, Berks County. The state of the record includes judgment liens held by the Estate of Mary C. Schumo, Deceased (Appellee), and Appellants, and tax liens for the years 1976 and 1977.

The Berks County Tax Claim Bureau (Bureau) notified Mosser that claims had been entered against her for non-payment of her 1976–1977 county, municipal and school taxes, and further advised her of a one-year redemption period from December 31, 1978, during which she could pay the claim. The notice continues: "If the claim is not paid in full before the end of the redemption period the property will be advertised and sold by the Tax Claim Bureau at a judicial sale, and no further redemption will be allowed after such sale." (R. 48a, 162a).

Mosser did not redeem the property and the Bureau listed the property for sale on September 10, 1979. Advertisements appeared in a newspaper of general circulation and in the county legal journal listing the property for sale and addressing notice to: "owners of properties described in this notice: to all persons, municipalities and taxing authorities having tax liens, tax judgments or municipal claims against such properties." (R. 49a, 53a).

The property was sold at the tax sale to Appellants, and the sale was confirmed by decree nisi on October 31, 1979.

On November 14, 1979, Appellee filed timely objections to the tax sale, alleging it had no notice of the sale from the Bureau and that, as to the estate, the sale was invalid. The Common Pleas Court agreed with Appellee, invalidated the tax sale by its opinion and order of July 20, 1982, and held that the Real Estate Tax Sale Law was unconstitutional insofar as it deprived judgment creditors of notice to tax sales because it deprived them of a valuable property right without due process of law.[1]

On August 20, 1982, Appellee, as a judgment lienor, had a writ of execution issued against Mosser which directed the Sheriff to sell the subject property on October 8, 1982. The trial court twice stayed the sale (October 4, 1982, October 12, 1982) to permit Appellants to intervene and to post bond as security for any loss to the Estate because of the stay. Since Appellants did not meet the conditions of the stay order, the property was sold by the Sheriff on November 5, 1982, to the Estate.

After the sale, Appellants attempted to have the Sheriff's deed impounded and claimed entitlement to the proceeds of the sale. These claims were dismissed by the trial court on November 10, 1982. An appeal was taken to Superior Court on November 23, 1982, then transferred to us by our order of January 12, 1983, which consolidated these cases.

The central issue before us is the constitutionality of the Real Estate Tax Law, Act of July 7, 1947, P.L. 1368, No. 542, *as amended*, 72 P.S. Section 5860.101 *et seq.*, which does not require either personal service or notice by mail to judgment creditors of impending tax sales.[2]

1. The Nolfs appealed that order to Commonwealth Court *Re: Upset Sale, Tax Claim Bureau of Berks County,* —— Pa. Commonwealth Court —— (1982) No. 1882 C.D. 1982 which Court transferred the appeal to us because a constitutional question was involved.

2. The notice provisions in effect at the time of the tax sale were governed by Section 5860.602 of the Real Estate Tax Sale Law. 72 P.S. Section 5860.602 *as amended* by the act of September 27, 1973, P.L. 268, No. 74, Section 6 and provided as follows:

■ The Due Process Clause of the Fourteenth Amendment to the Federal Constitution requires at a minimum that the deprivation of life, liberty or property by adjudication must be preceded by notice and opportunity for hearing appropriate to the nature of the case. The United States Supreme Court beginning with *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 94 L.Ed. 865, 70 S.Ct. 652 (1950), has invoked the Due Process Clause and required states to make efforts to provide actual notice to all parties whose interests are affected by proceedings before a tribunal.

#### Notice of Sale

Prior to any scheduled sale the bureau shall give notice thereof, once a week for three (3) consecutive weeks in two (2) newspapers of general circulation in the county, if so many are published therein, and once in the legal journal, if any, designated by the court for the publication of legal notices. Such notice shall set forth (a) the purposes of such sale, (b) the time for such sale, (c) the place of such sale, (d) the terms of the sale including the approximate upset price, (e) the descriptions of the properties to be sold as stated in the claims entered, each description commencing with

" .........................................................................
Name of Owner

.........................................................................."
description

Where the owner is unknown and has been unknown for a period of not less than ten years, the name of the owner need not be included in such description.

The description may be given in intelligible abbreviations.

Such published notice shall be addressed to the "owners of properties described in this notice and to all persons having tax liens, tax judgments or municipal claims against such properties.

In addition to such publications, similar notice of the sale shall also be given by the bureau, at least ten (10) days before the date of the sale, by United States Certified mail personal addressee only, return receipt requested, postage prepaid, to each owner as defined by this act and by posting on the property.

The published notice, the mail notice and the posted notice shall each state that the sale of any property may, at the option of the bureau, be stayed if the owner thereof or any lien creditor of the owner on or before the date of the sale enters into an agreement with the bureau to pay the taxes in installments in the manner provided by this act, and the agreement entered into.

No sale shall be defeated and no title to property sold shall be invalidated because of proof that mail notice as herein required was not received by the owner, provided such notice was given as prescribed by this section.

In the recent case of *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the United States Supreme Court ruled that a mortgagee possessed a substantial property interest that would be significantly affected by a tax sale and that the mortgagee was entitled to actual notice of the sale. We followed the *Mennonite* decision in *First Pennsylvania Bank, N.A. v. Lancaster Tax Claim Bureau*, 504 Pa. 179, 470 A.2d 938 (1983), ruling that the notice provisions of the statute under review here were unconstitutional as applied to mortgagees.

We must now decide whether judgment creditors are also entitled to personal or general notice by the Bureau as a matter of due process of law.

■ Judgment liens are a product of centuries of statutes which authorize a judgment creditor to seize and sell the land of debtors at a judicial sale to satisfy their debts out of the proceeds of the sale. The judgment represents a binding judicial determination of the rights and duties between the parties, and establishes their debtor-creditor relationship for all the world to notice when the judgment is recorded in a Prothonotary's Office. When entered of record, the judgment also operates as a lien upon all real property of the debtor in that county. 42 Pa.C.S. Sections 4303(a)(b), 1722(b) and 2737(3).

■ The judgment lien represents security for the underlying debt, *Commonwealth v. Meyer*, 169 Superior Ct. 40, 82 A.2d 298 (1951), and conveys a right of execution to the judgment creditor in satisfaction of his debt. The judgment not only affects all real property owned by the debtor, but extends to his equitable interests, *Auwerter v. Mathiot*, 9 Serg. and R. 397 (1823) and beneficial interests as well *Davis v. Commonwealth Trust Company*, 335 Pa. 387, 7 A.2d 3 (1939).

■ The existence of a judgment lien prevents a debtor from encumbering or conveying any property he might own in such a way as to divest the effect of the judgment, while also preventing later lienholders from satisfying their debt

without first paying the earlier lien. The judgment lien thus constitutes a liquidated claim, *Educational Society v. W.D. Gordon*, 310 Pa. 470, 166 A. 499 (1933), which has value to the judgment creditor. The judgment can be assigned, pledged, or used as collateral and is a valuable form of property. We have already decided that a judgment is property and that a judgment creditor's interest cannot be deprived without due process of law. *Pennsylvania Company v. Scott*, 346 Pa. 13, 29 A.2d 328 (1942).

Appellant argues, however, that the judgment creditor has no property right jeopardized by a tax sale, and that no notice is due to him. We disagree. It is true that a judgment lien is called a general lien—unlike a mortgage which is a specific lien against a particular piece of real property. Such has been the recognized law in this Commonwealth for some time. *Ruth's Appeal*, 54 Pa. 173 (1867). Our law recognizes that a judgment is a hold on all the debtor's real estate without discrimination, but our courts have consistently concluded that the judgment creditor is not interested in the property as property, but only in the lien. As was said in *Cover v. Black*, 1 Barr 493 (1845): "The judgment creditor has neither *jus in re* nor *ad rem* as regards the (debtor's) property. He has a lien, and the law gives a right to satisfaction out of the property, and that is all." *Grevermeyer v. Southern Mutual Insurance Company*, 62 Pa. 340 (1869).

While judgment-creditors have neither estate nor right in the lands of their debtor, it has never been the law that they do not have any protectable property interest. *Witmer Appeal*, 45 Pa. 455 (1863). Quite to the contrary, the judgment itself is property which may be defended by forced judicial sale of the debtor's land. It is quite properly said that judgment creditors are interested in the property of the debtor only because they have a right to seize it, sell it, and satisfy the debt from the proceeds of the sale. It is this very right of execution which gives a judgment lien its effectiveness and great value. Any judicial proceeding which impairs or diminishes the value and reach of the

judgment certainly affects its holder adversely. Such is the case before us.

In addition, we note that it is important to separate concepts of secured and unsecured creditors on the one hand from the concepts of general and specific security interests or liens on the other. As we read *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), due process requires protection of liens because they are property interests. It does not distinguish between general and specific liens. Mortgages are liens—and hence property interests—on specific assets. A judgment is also a lien—and hence a property interest—covering all real property of the debtor against whom it is entered. Judgments are no less property interests because they are general security interests, attaching to all of a debtor's real property within the territorial jurisdiction of the court among whose records they are filed, rather than to a specific parcel. They are therefore no less entitled to the due process protections set forth in *Mennonite Board, supra*, and *First Pennsylvania Bank, N.A. v. Lancaster County Tax Claims Bureau*, 504 Pa. 179, 470 A.2d 938 (1983).

The statute under review gives lien holders the right to redeem property for the benefit of the owner, before a tax sale, 72 P.S. Section 5860.501,[3] and permits lien holders to file objections to a tax sale within 60 days after the court

---

3. 5860.501 **Redemption of property from effects of tax claims**

(a) Any owner, his heirs or legal representatives, or any lien creditor, his heirs, assigns or legal representative, or other person interested, if such other person has a duly executed power of attorney from the owner, his heirs or assigns or legal representative or any of them empowering such person to make payment may, within one (1) year after the first day of July of the year in which the claim was filed and notice given, if the notice was mailed prior to August first, or within one year from the first day of the month in which the notice was mailed, if mailed on or after August first, redeem such property for the benefit of the owner by payment to the bureau of the amount of the aforesaid claim and interest thereon, the amount of any other tax claim or tax judgment due on such property and interest thereon, and the amount of all accrued taxes which remain unpaid, the record costs, including pro rata costs of the notice or notices given in connection with the returns or claims.

confirms the sale by its nisi decree, 72 P.S. Section 5860.-607.[4] Furthermore, where no objection to the tax sale is timely made the sale operates to divest all liens against the property, except mortgages recorded prior to the tax liens. 72 P.S. 5860.609.[5] But how are lienholders to exercise their statutory rights, redeem the property, or timely object to the tax sale when they are not given notice?

The general notice provided in this statute is inadequate to meet the requirements of due process as far as judgment creditors are concerned. Notice directed only to the owner and taxing bodies, as required by the statute, does not advise judgment creditors any more than it does mortgag-

4. **Section 5860.607 Bureau's return to court; notice; confirmation; appeal**
(a) It shall be the duty of the bureau, not later than (60) days after a scheduled sale was held, to make a consolidated return to the court of common pleas of the county, wherein it shall set forth, (1) a brief description of each property to sale, (2) the name of the owner in whose name it was assessed, (3) the name of the owner at the time of sale, and to whom notice by mail was given as provided by this act, (4) a reference to the record of the tax claim on which the sale was held, (5) the time when and the newspapers in which the advertisement for sale was made, with a copy of said advertisement, (6) the time of sale, (7) the name of purchaser, if any, and (8) the price for which each property was sold, or that no bid was made equal to the upset price and the property was sold. Upon presentation of said return, if it shall appear to said court that such sale has been regularly conducted under the provisions of this act, the said return and the sales so made shall be confirmed nisi.
(b) The bureau shall, at the expense of the county, within ten (10) days after confirmation nisi of the return, publish a general notice once in a newspaper of general circulation published in the county, and in the legal journal, if any, designated by rules of court for the publication of legal notices, stating (1) that the return of the bureau with respect to any such sale for taxes has been presented to the court, (2) giving the date of such presentation, and (3) that objections or exceptions thereto may be filed by any owner or lien creditor within sixty (60) days after the date of return, otherwise the return will be confirmed absolutely.

5. **Section 5860.609 Certain liens divested by sale.** Every such sale shall discharge the lien of every obligation, claim, lien or estate with which said property may have or shall become charged, or for which it may become liable, except no such sale shall discharge the lien of any ground rent or mortgage which shall have been recorded before such taxes become liens, and which is or shall be prior to all other liens, except other mortgages and ground rents. 1947, July 7, P.L. 1368, art. VI, Section 609.

ees, that their interests may be affected by the tax sale. It is argued that general notice is notice to all the world, including judgment creditors, that a piece of real estate is being sold at a tax sale and that all interested parties can participate. Such notice, however, advises the general public only that a piece of real estate is to be sold. It does not inform individuals who have property interests that their interests may be affected by the tax sale. Such individuals are entitled to more than a "squib" in a local newspaper or county law journal buried between the automobile sales and want ads. The general public will neither lose nor gain anything by virtue of a tax sale, but judgment creditors are likely to lose the security of their debts and hence their property.

Upon review we conclude that the lack of sufficient notice could have impaired the value of Appellee's judgment because without notice, Appellee would have no real opportunity to redeem the property, (72 P.S. Section 5860.501), bid at the tax sale, or assert any defects to the sale. Most importantly, the tax sale immediately and drastically diminished the value of Appellee's judgment by granting the purchaser title free of all liens. 72 P.S. Section 5860.609. In effect, Appellee's security for its legal debt was nullified without opportunity to be heard because notice was not forthcoming. Further, Appellee cannot even look to the proceeds of the tax sale to satisfy its debt, as occurs in execution sales, because only taxing bodies share in the distribution of the sale proceeds.

 We hold, therefore, that tax sales are proceedings which may deprive judgment creditors of property rights, and hence, notice and hearing must measure up to the standards of due process. When the judgment creditor is identified in a judgment that is publicly recorded, constructive notice by publication must be given and supplemented by notice mailed to the judgment creditor's last known available address, or by personal service as is the case for mortgagees. *First Pennsylvania Bank N.A.*, 504 Pa. at 181, 470 A.2d at 939.

Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable.

*Mennonite*, 462 U.S. at 800–801, 103 S.Ct. at 2712.

Contrary to Appellants' arguments, a notice requirement would not unduly burden the Bureau. The Bureau can easily run a judgment search against its tax delinquents, ascertain the names and addresses of judgment creditors, and provide them personal notice of the tax sale, by mail, and assess any costs for the search out of the costs of the tax sale. Such notice is information which the County is constitutionally obliged to give judgment creditors as interested parties to tax sales. Accordingly, under *Mullane, Mennonite Board,* and *First Pennsylvania Bank N.A.,* the notice provision in Pennsylvania's Real Estate Tax Sale Law violates the due process rights of judgment creditors. The trial court was, therefore, correct in setting aside the tax sale of September 10, 1979.

Appellants also argue that the trial court erred in refusing to stay Appellee's sheriff sale of the subject property, (November 5, 1982) impound the sheriff's deed after the sale, permit Appellants to share in the proceeds of the sale, and preserve the status quo between the parties during this appeal. We have carefully reviewed the record in this matter and find appellant's arguments meritless.

The grant of a stay of execution is within the sound discretion of the trial court and its decision will not be disturbed absent a clear abuse of that discretion. Pa.R. C.P. 3121(b). See *Pennsylvania Company, et al. v. Scott, et al.,* 329 Pa. 534 at 549, 198 A. 115 at 122 (1938); *Augustine v. Augustine,* 291 Pa. 15 at 18, 139 A. 585 at 586 (1927); *Patterson v. Patterson,* 27 Pa. 40 (1856). The trial court's October 10, 1982, order gave Appellants the opportunity to stay the sale subject to their posting security to protect Appellee's interests. Appellants were present when

the order was orally delivered by the trial court, and knew its precise terms. When they chose not to post the security, they forfeited any rights to the stay or to complain that the sale proceeded. Additionally, since Appellants did not proceed according to Pa.R.C.P. 3132 they were not entitled to have the Sheriff's deed impounded.

■■■ As to Appellants' claim of entitlement to distribution of the proceeds of the sheriff's sale, their right is subordinate to payment of the costs and tax liens. The sheriff properly distributed the proceeds of the sale first towards satisfying the costs. Since the costs exceeded the bid, nothing remained for Appellants to claim and their request was properly dismissed.

■■■ Finally, Appellants argue that the trial court should have directed the Prothonotary to note that the tax sale operated as a "lis pendens" against the subject property. The tax sale itself was a sufficient notice of lis pendens against the property, (See 42 Pa.C.S. Section 4302(a)), as is the existence of Appellants' judgments and the tax claims on record in the Prothonotary's office. Since we find no abuse of discretion or error in the actions of the trial court, we will affirm same.

It is so ordered.

ZAPPALA, J., filed a Dissenting Opinion in which McDERMOTT, J., joined.

ZAPPALA, Justice, dissenting.

I dissent from the majority opinion announced today which requires that all judgment creditors be given personal notice prior to a tax sale. The effect of the majority opinion is to equate secured and unsecured creditors, an unwarranted result.

A "judgment creditor" by definition is "one who has obtained a judgment against his debtor, under which he can enforce execution." *Black's Law Dictionary, Fifth Edition, 1979.* Once such a judgment is obtained, it may be indexed in the Prothonotary's Office in the county in which

the debtor's property is situated, thus giving the judgment creditor a general lien on all of the debtor's real property. 42 Pa.C.S. § 4303. Although a judgment creditor maintains a general lien on all the real property of the debtor, he is not a secured creditor but rather an unsecured creditor. The unsecured judgment creditor may then attempt to collect the debt through enforcement procedures. *See* Pa. R.Civ.P. 3101 et seq.

In contrast, a secured creditor bargains for and obtains security from the debtor for the debt. This security may attach to all real and personal property of the debtor or to any particular item of real or personal property. In any event, the debtor creates a "valuable property interest" in favor of the secured creditor. It is this distinction between secured and unsecured creditors that mandates different treatment in our judicial system. Once properly perfected, a secured interest can only be eliminated upon personal notice, and an opportunity to protect such interest. The protection of this valuable property interest served as the basis for the United States Supreme Court's decision in *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), wherein the Court held that a mortgagee was entitled to receive actual notice of a tax sale. Subsequently, we followed the *Mennonite* decision in *First Pennsylvania Bank, N.A. v. Lancaster Tax Claim,* 504 Pa. 179, 470 A.2d 938 (1983). Now, the majority extends the rationale of *Mennonite* and *First Pennsylvania Bank* to a situation in which a judgment creditor maintains a general lien, arguing that this general lien is equivalent to a "valuable property interest" of a secured lien. With this conclusion I cannot agree.

By concluding *Mennonite* compels its holding today, the majority disregards the fact that the issue presented to the U.S. Supreme Court in that case was " ... whether notice by publication and posting provides a mortgagee of real property with adequate notice of a proceeding to sell the

mortgaged property for nonpayment of taxes." *Mennonite*, 103 S.Ct. at 2708. Without reference to the issue raised in *Mennonite*, the majority glibly assumes that the U.S. Supreme Court's reasoning is equally applicable to the facts of the instant case. This analytical error leads the majority to interpret the expansive language contained in *Mennonite* as eliminating any distinction between a mortgagee's property interest and that of a judgment creditor. In light of our Court's unprecedented and unwarranted extension of the analysis in *Mennonite*, it is clear that the grave concern expressed by Justice O'Connor in her dissenting opinion that the holding would be misconstrued was justified.

In support of its position, the majority relies upon *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Commonwealth v. Meyer*, 169 Pa.Super. 40, 82 A.2d 298 (1951); and *Pennsylvania Company v. Scott*, 346 Pa. 13, 29 A.2d 328 (1942). In *Mullane v. Central Hanover Bank and Trust Co.*, *supra*, the United States Supreme Court was faced with the issue of the sufficiency of notice given to beneficiaries of a common trust fund of the scheduled judicial settlement of the accounting. The effect of this proceeding was to terminate any questions of mismanagement of the common fund, including negligent or illegal impairment of monetary interests or diminution of the trust fund through the payment of fees and expenses. Thus the Court found an actual deprivation of property. Having determined that a beneficiary's property interest may be substantially impaired by the judicial proceeding, the due process clause of the 14th Amendment mandated that personal notice of the hearing was required to any known beneficiary.

The majority relies upon *Pennsylvania Company v. Scott*, *supra*, to buttress its position that "a judgment is property and that a judgment creditor's interest cannot be deprived without due process of law". At 335. While *Pennsylvania Company* holds that a judgment cannot be

deprived without due process of law, the context in which it appears is quite distinct from the present appeal. In *Pennsylvania Company,* the plaintiff argued that the legislature attempted to obviate perfected judgments through the use of its lawmaking powers, and as a result was diminishing its property. The judgment was the legal obligation incurred by the judgment debtor. Thus, *Pennsylvania Company* is in complete accord with my analysis that an underlying obligation cannot be impaired without due process of law. Contrary to what the majority holds today, an underlying obligation is quite different from a lien. The majority's attempts to equate an underlying debt with a lien are misplaced.

Finally, the majority cites *Commonwealth v. Meyer, supra,* for the proposition that a judgment lien represents *security* for the underlying debt. At 335. In *Meyer,* the defendant tendered a judgment note containing a confession of judgment clause as restitution to his victim in return for a reduced sentence. The defendant then failed to satisfy the note, and based upon the court's determination that the defendant misrepresented his penitent state of mind, revoked probation and incarcerated the defendant. The defendant then appealed his sentence. While Judge Hirt does state that "a judgment until made productive by payment is but security for the acknowledged debt" (citation omitted), 169 Pa.Super. at 44, 82 A.2d at 301, nowhere does the *Meyer* decision equate a judgment with a secured lien. Relying upon *Meyer* to support the majority's conclusion that a general lien is a secured interest creating a valuable property interest extends *Meyer* far beyond its intended purpose.

Contrary to what the majority holds today, instances arise under the law in which personal notice is not required prior to diminishing a general lien. For example, under our Decedents, Estates and Fiduciaries Code, the Act of June 30, 1972, P.L. 508 No. 164 § 2, 20 Pa.C.S.A. § 101 et seq.,

publication is sufficient notice to extinguish a general lien on all the decedent's property involved in probate administration. 20 Pa.C.S. § 3162. An executor or administrator is under no duty to search the court records and personally advise any and all judgment creditors of distribution. This has been upheld even when the executor has actual knowledge of a creditor. *In re Doster's Estate,* 346 Pa. 455, 31 A.2d 142 (1943). Not only is a judgment creditor's lien extinguished, but the underlying debt is extinguished as well. Yet, personal notice is not required.

Furthermore, a general lien not revived may be extinguished. Unlike a secured lien, a judgment lien must be revived every five years or lose its priority and possibly its status as a lien. 42 Pa.C.S. § 5526. Yet the law is quite clear that although a lien may be extinguished by its failure to be revived, a judgment neither satisfied nor discharged remains in full force and effect. *Hinds v. Scott,* 11 Pa. 19, 1 Jones 19 (1849).

Consequently, it is clear that we have always treated secured creditors, such as mortgagees, and judgment creditors differently. No reason has been advanced to afford a judgment creditor protection which he has neither sought nor bargained for. The majority concludes that failing to give judgment creditors personal notice could impair the judgment creditor's judgment because he would have "no real opportunity to redeem the property, bid at the tax sale or assert any defects to the sale." At 338. The majority fails to comprehend that it is not the judgment or underlying debt that will be extinguished, only the lien. The judgment creditor still has the right to proceed on the debt and, if necessary, index another lien upon different property.

Accordingly, I would not require actual personal notice be given to an unsecured judgment creditor.

McDERMOTT, J., joins in this dissenting opinion.