## Gay v. Cooper

*Jettie D. Newkirk,* for plaintiff John R. Gay.

*Harris B. Savin,* for plaintiffs Louis Cooper and Reba Cooper.

*Andrew P. Bralow* for defendant City of Philadelphia.

GAFNI, *J.*, February 8, 1988 — This is an action for damages for breach of a mortgage agreement. The parties to the suit ask whether notice to the mortgagee through posting and publication satisfied the due process requirement of reasonable notice. The parties essentially stipulated to the following:

(1) On October 5, 1976, plaintiff John Gay, now deceased, purchased two plots of land from defendants Louis and Reba Cooper.[1] The Coopers took back a purchase money mortgage from Gay.

(2) The mortgage agreement provided that Gay would pay one-twelfth of the real estate taxes due with each monthly payment.[2] The record is unclear as to when the Coopers stopped payments. In 1983, the Coopers notified Gay that the taxes had gone up and that the monthly payment had increased. Gay continued to make payments to the Coopers until on or about April 1984. Gay paid each installment on a regular basis and was never informed by the Coopers that his monthly payments were insufficient to pay the taxes.

---

1. The deeds to these two plots were recorded in the Deed Book DDC 1222, p. 461 on October 7, 1976, and in the Mortgage Book—DDC 992, p. 118 on October 7, 1976, to plaintiff. The Board of Revision of Taxes assessed the premises known as 4081 Lancaster Avenue and 4076 Olive Street as one parcel with an account number of 06-108890.

2. Paragraph three of the mortgage agreement provides: "Deposit with and pay to obligee each month a sum equal to one-twelfth of the amount (as estimated by the obligee) of the water rents, sewer rents and taxes, assessed yearly thereon, and of the premiums next to be due on the insurances described in (a) hereof (estimated on an annual basis) all to be applied by obligee in full or partial payment thereof."

(3) In March 1981, the City of Philadelphia filed a petition in the Court of Common Pleas seeking a rule to show cause why the property should not be sold at a tax sale. The court granted the petition. A title report attached to the petition omitted mention of the Coopers' interest in the premises and incorrectly stated that there were no mortgages on the premises. It is undisputed that the Philadelphia Department of Records duly recorded and correctly indexed Gay's mortgage to the Coopers.

(4) On September 23, 1983, the sheriff attempted to serve Gay with notice of the petition. Gay, however, no longer resided at the address contained in the title report. Since the Coopers' names did not appear on the title report the sheriff made no attempt to serve them. The sheriff posted the premises with a copy of the petition pursuant to the alternative service provisions of the Municipal Claims and Liens Act of May 16, 1923, P.L. 207 as amended, 53 P.S. §7283.[3]

(5) The sheriff's sale took place on April 4, 1983. Edward and Sandra Cohen, presently additional defendants to the suit, purchased the property. Neither Gay nor the Coopers knew of the sale until May of 1983. Consequently, in November of 1984, Gay filed this suit against the Coopers for breach of the mortgage agreement and for damages resulting from the sale of the property. The Coopers filed a third party complaint against the city and the Cohens alleging that the sale was defective due to

---

3. The act provides that if service be made in accordance with the act the court "shall order and decree that the property be sold at a subsequent sheriff's sale at a time to be fixed thereafter." It is not possible to determine from the record exactly how long the premises displayed notice of the petition; however, more than six months passed between the granting of the petition on September 19, 1982, and the date of the sale.

the city's failure to provide reasonable notice to them.

## DISCUSSION

The U.S. Supreme Court has held "[w]hen the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service." *Mennonite Board of Missions v. Adams,* 462 U.S. 791 (1983). See also, *First Pa. Bank v. Lancaster County Tax Claim Bureau,* 504 Pa. 179, 470 A.2d 938, 941 (1983). When a mortgagee is reasonably identifiable, the mortgagee "is entitled to notice reasonably calculated to apprise him of a pending tax sale." *Mennonite Board,* 462 U.S. at 798.

The city contends that it was entitled to rely on the title report which showed no mortgages on the property and that its actions were reasonable in light of "all relevant standards of due process existing at the time of the sale." It asserts, moreover, that neither *Mennonite Board,* nor *First Pennsylvania,* stated that the *Mennonite Board* decision should be applied retroactively and that retroactive application would cloud the titles of many sales.

The Coopers assert, and this court agrees, that even though the sheriff's sale was held prior to the decision in *Mennonite Board,* the holding in that case should be applied in this instance. In *First Pennsylvania,* the court vacated an earlier decision of the Supreme Court of Pennsylvania and remanded for reconsideration in the light of *Mennonite.* The earlier decision, *First Pennsylvania Bank, N.A. v. Lancaster County Tax Claim Bureau,* 498 Pa. 120, 445 A.2d 97 (1982), had dismissed an appeal

from a Commonwealth Court decision upholding a tax sale in spite of failure to give adequate notice to a mortgagee whose name appeared of record. It is apparent from the Commonwealth Court's decision, *First Pennsylvania Bank, N.A. v. Lancaster County Tax Claim Bureau,* 44 Pa.Commw. 301, 404 A.2d 709 (1979), that the tax sale in question occurred more than five years before *Mennonite Board.* On remand, the Supreme Court of Pennsylvania applied the *Mennonite Board* rule to the tax sale in *First Pennsylvania,* notwithstanding the fact that that sale took place long before the *Mennonite Board* rule was announced.

In short, while neither the U.S. Supreme Court nor the Supreme Court of Pennsylvania discussed whether *Mennonite Board* should be applied retrospectively, both courts, in fact, so applied it.

Moreover, "at common law, an overruling decision is normally retroactive." *Fairbanks v. Travelers Ins. Co.,* 337 Pa. Super. 39, 40, 486 A.2d 469, 470 (1984), quoting *August v. Stasak,* 492 Pa. 550, 554, 424 A.2d 1328, 1330 (1981). See also, *Mihalcik v. Celotex Corp.,* 354 Pa. Super. 163, 511 A.2d 239 (1986) (stating that judicial decisions in Pennsylvania are normally retroactive). To justify non-retroactive application of a decision, the courts have considered three factors:

"First, the decision to be applied non-retroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed. . . . Second, it has been stressed that 'we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its opera-

tion.' . . . Finally, [the courts] have weighed the inequity imposed by retroactive application, for '[w]here a decision . . . could produce substantial inequitable results if applied retroactively, there is ample basis in [the case-law] for avoiding the "injustice or hardship" by a holding of nonretroactivity.' *Fairbanks, Id.* at 470, quoting *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106-7, 92 S.Ct. 349, 358, 30 L.Ed.2d 296, 306 (1971) (citations omitted). See also *Mihalcik, supra.*

## The Ruling Was Foreshadowed

In 1950 the U. S. Supreme Court "recognized that prior to an action which will affect an interest in life, liberty, or property protected by the due process clause of the Fourteenth Amendment, a state must provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Mennonite Board* at 185 (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)). The *Mullane* court's interest in protecting interested parties' property rights typified the rule later applied in *Mennonite Board.* The Supreme Court of Pennsylvania's decision in *Luskey v. Steffron Inc.,* 469 Pa. 381, 366 A.2d 223 also foreshadows the *Mennonite Board* rule. In *Luskey* the court held that notice by publication and posting denied due process of law by not providing for personal notice to the owner of real estate that is subject to a tax sale. *Id.* at 224.

Finally, both the city and the Coopers indicate that the city's practice is to give personal notice to all interested parties. In 1977, the Common Pleas Court of Centre County in *Arco v. Hummel,* 13 Centre Leg. J. 181 (1977), expressly noted that the

sheriff of Philadelphia had adopted the practice of sending letters directly to the owners of properties informing them of future sales. See also, 9 Goodrich-Amram 2nd §3129 (b):1.

The above rulings and prior practice reflect a recognition of the property of providing to the publicly recorded mortgagee personal notice of a tax sale; the holding in *Mennonite Board,* therefore, was clearly foreshadowed.

### *Retroactive Application Will Neither Further nor Retard the Rule nor Produce Inequitable Results*

Retroactive operation of the Mennonite Board rule will neither further nor retard its operation. Accordingly, the test appearing in *Chevron, supra,* is not a factor in determining whether the rule is retroactive.

Only the city argues that the retroactive application of the rule would impose undue hardship. It emphasizes that the city relies on the title reports, not the public records, for giving notice to the interested parties. Since both the city and the Coopers indicate that the city's practice is to give personal notice to all interested parties, this procedure would normally ensure that parties receive proper notice.

The mortgagees did not receive notice in this case only because the title report failed to identify them as mortgagees.[4] Because such an oversight does not occur with any great frequency, there is no reason to believe that a significant number of sheriff's sales in Philadelphia have failed to comply with the notice requirements of *Mennonite Board.* Inequitable re-

---

4. In fact, if anyone is at fault here, it is the title company for having failed to properly record the mortgage; it is to the title company that any party aggrieved by this decision may wish to look.

sults would, thus, not arise from the initiation of a flood of lawsuits to rescind past sheriff sales.

The city also argues that the six month statute of limitations bars defendant's claims to rescind the sheriff's sale. However, because both the city and the Cohens failed to plead this affirmative defense in any answer, new matter, or amendment, the defense is waived. See Pa. R.C.P. 1029, 1030, 1032, 1033.

This court concludes that the city's reliance on the title report will not protect it from a claim that it has not given notice to all appropriate parties who are entitled by law to be informed of the pending sale. The Coopers' name was properly recorded in the public record and, accordingly, notice should have been given them at their last known address. The tax sale was invalid since the Coopers received neither notice by mail nor personal service.